1
2
3
4
5
6
7
8
9

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

10
11
12
13
14
15
16

| | |
|---|---|
| **BANK OF THE SIERRA, a California Corporation,**<br><br>            **Plaintiff,**<br>      **v.**<br><br>**JOHN KALLIS, an individual, and DOES 1 through 10, inclusive,**<br><br>            **Defendants.** | **CIV F 05-1574 AWI SMS**<br><br>**ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, or alternatively, PARTIAL SUMMARY ADJUDICATION** |

17
18      This is a breach of written guarantee case brought by Plaintiff Bank of the Sierra ("the

19 Bank") against Defendant John Kallis ("Kallis").  The Bank alleges a single cause of action

20 against Kallis for breach of a written guarantee of a loan and seeks money that remains

21 outstanding on the loan after the public sale of collateral.  For the reasons that follow, the Bank's

22 motion will be granted in part and denied in part.

23

24                              **FACTUAL BACKGROUND**

25      On April 13, 2005, STR Enterprises, Inc. ("STR") executed a Promissory Note ("the

26 Note") in the principal amount of $250,000 in favor of the Bank.  Plaintiff's Undisputed Material

27 Fact ("PUMF") No. 1.  On April 13, 2005, STR executed a Commercial Security Agreement

28

giving the Bank a security interest in STR's personal property.[1]  PUMF No. 2.  The Note was executed by STR representatives.  PUMF No. 3.  On April 13, 2005, Kallis executed a Small Business Administration (SBA) Unconditional Guarantee ("the Guarantee"), in favor of the Bank, which provides that Kallis guarantees payment to the Bank of all amounts owing under the Note.  PUMF No. 6.[2]

The Bank made the loan to STR in the principal amount of $250,000.  PUMF No. 4. STR failed to make monthly payments to the Bank consistent with the terms of the Note, so the Bank elected to accelerate the balance on the Note.  PUMF No. 5.

On September 14, 2005, Gary Kerr ("Kerr") of West Coast Rubber Recycling, Inc., sent by fax a letter to Janice Castle, a Vice President of the Bank, indicating his desire to purchase STR's collateral for a total of $125,000.  Defendant's Undisputed Material Fact ("DUMF") No. 1.  Some time after September 14, 2005, Kerr withdrew his offer to purchase the collateral due to the Bank's refusal of the offer, saying instead that the collateral would be sold at a public sale. DUMF No. 2.  On September 26, 2005, Ward Stringham, attorney for STR, sent an e-mail to the Bank indicating Kallis's election to have a private sale conducted in an effort to mitigate his damages.[3]  DUMF No. 3.

On or about September 28, 2005, the Bank requested that Capital Management Corporation, doing business as WT Capital ("WT Capital"), conduct a California Commercial

---

[1]The personal property collateral was various equipment used in the tire recycling business, e.g. tire shredder, shaker screens, conveyors, etc.  See Castle Declaration Exhibit C; Berg Declaration Exhibits A & B.

[2]Kallis disputes this PUMF by citing to DUMF No. 14 and to Bank documents that indicate that the guaranteed portion of the Note is 75%, which arguably leads to a substantial reduction in the amount owed by Kallis. However, the PUMF is in terms of the content of the Guarantee.  The Guarantee states that the guarantor "guarantees all amounts owing under the Note."  Farley Declaration Exhibit F.  There is no limitation in the Guarantee that indicates that the Guarantee applies to anything less than 100% of the Note.  Given that the PUMF is in terms of what the Guarantee itself provides, Kallis's response does not contradict the content of PUMF No. 6.  Thus, PUMF No. 6 is not disputed.

[3]Specifically, the e-mail states, "John Kallis, as guarantor of the loan to STR, objects to disposition of collateral by sale or other means which will result in any deficiency on the loan and demands both notice and opportunity to mitigate the loss by private sale."  Stringham Declaration Exhibit A.

Code sale of the personal property collateral that had been pledged by STR as security for the Note. PUMF No. 7. WT Capital conducted a search to determine the proper parties to serve with the Notice of Sale. PUMF No. 8.[4] On or about October 7, 2005, WT Capital caused to be published an Amended Notification of Disposition of Collateral in the Tulare Advance-Register, a Newspaper of general circulation in Tulare County. PUMF No. 9. The published Amended Notification of Disposition of Collateral gave notice that the sale of the personal property collateral was to occur on Monday, October 17, 2005, at 2:00 p.m., at the entrance to the City Hall, 411 East Kern Avenue, Tulare, California. PUMF No. 10. On October 5, WT Capital caused to be mailed by Certified Mail, Return Receipt Requested, to John Kallis, individually and as Vice President of STR Enterprises, the Amended Notification of Disposition of Collateral at six addresses;[5] the Notification was also sent to the persons identified in WT Capital's search. PUMF No. 11. On or about October 5, 2005, WT Capital also sent an e-mail to Kallis, using an e-mail address that was provided to WT Capital by Kallis, and attached a copy of the Amended Notification of Disposition. PUMF No. 12.

On October 17, 2005, WT Capital conducted the sale at the time and place previously noticed. PUMF No. 13; see also DUMF No. 6. The Bank sold the property that secured the Note. PUMF No. 14; see also DUMF No. 4. There were three bidders at the sale. PUMF No. 15. WT Capital opened the bidding at $35,000; there were 12 bids, and the closing bid was in the amount of $51,000 by Kerr. PUMF No. 16; see also DUMF Nos. 4, 6, 7. Kerr had been prepared to pay up to $175,000 for the collateral and perceived that the value of the collateral

---

[4]Kallis's disputes PUMF Nos. 8-14 on the basis that he has no personal knowledge as to either WT Capital's efforts or conduct. See Defendant's Response to PUMF Nos. 8-14. These PUMF's are supported by the Declaration of WT Capital's Senior Vice President. See Berg Declaration at ¶ 1, 3. Kallis is required to present evidence that challenges a proposed PUMF. Without more, simply stating that a fact is disputed creates does not alone create a disputed issue of material fact. See Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002). That Kallis has no personal knowledge of WT Capital's efforts does not create a dispute. PUMF Nos. 8-14 is undisputed.

[5]Five addresses are for John Kallis as Vice President and were sent locations in Fresno and Tulare, California, and to Upper Saddle River, New Jersey. One address is for John Kallis, as an individual, in Upper Saddle River, New Jersey. PUMF No. 11.

was more than $125,000.  DUMF Nos. 5, 8.    Kerr had never before attended a sale such as the

one conducted by the Bank.  DUMF No. 15.[6]  WT Capital sent the Bank the proceeds of the

public sale in the amount of $51,000.  PUMF No. 17.  The Bank applied the proceeds from the

sale of STR's personal property to the balance on the note.  PUMF No. 18.[7]   On November 7,

2005, on a Substandard Loan Estimated Liquidation Value form, the Bank listed $207,000 as the

estimated value of the sold collateral.  See DUMF No. 9; Bank's Response to DUMF No. 9.

According to the Bank, the $207,000 was the value given by STR at the time the Note and

Security Agreement were made.  See Bank's Response to DUMF No. 9.  Equipment appraisers

hired by Kallis examined photographs as well as personally examined many of the collateral

items and determined the value of such collateral to be $337,200.  DUMF No. 10.[8]

      After application of the sale proceeds, as of September 14, 2006, the unpaid balance on

the Note totaled $215,905.92 (principal of $200,865.28 and interest of $15,040.64).  PUMF No.

19.  Interest continues to accrue at the rate of 8.257 % per annum, for a daily rate of $45.44 until

entry of judgment.  PUMF No. 20.[9]  The Bank has demanded payment from Kallis of an amount

---

[6]The Bank argues that this fact is not relevant or material and that there is no foundation for an expert opinion by Kerr.  Kallis responds that he is offering Kerr's testimony as a lay opinion and not as an expert opinion. Kerr is in the tire recycling business, but the deposition pages provided do not explain Kerr's experience.  Since this DUMF will not change the outcome of this motion, it is not necessary to rule on the Bank's objections.

[7]Kallis responds that the original complaint did not credit the $51,000 sale proceeds, and then states that the amended complaint does not credit Defendant with $51,000.  A review of the original complaint indicates that the suit is for approximately $256,000.  The amended complaint, however, sought approximately $206,000.  Also, both complaints included accrued interest.  The amended complaint supersedes the original complaint.  Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  The Declaration from a Vice President of the Bank indicates that the $51,000 was applied against the outstanding balance on the Note.  See Castle Declaration at ¶¶ 12-13.  Kallis has presented no other evidence that is contrary to PUMF No. 18, and he must do more than simply say a dispute exists.  See Agosto, 299 F.3d at 23; Bryant, 289 F.3d at 1167.  Despite the original complaint, and given the absence of any other contrary evidence, the amended complaint and the Castle Declaration show that the $51,000 proceeds were applied to the Note.  In the absence of other evidence, PUMF No. 18 is undisputed.

[8]The basis for this DUMF is two declarations by equipment appraisers.  The Bank objects that the declarations are ambiguous, have an insufficient foundation, and insufficiently describe the methodology used. Given the resolution of this motion, it is not necessary to rule on this objection at this time.

[9]Kallis argues that the amount of interest accruing and the amount left on the Note are in dispute because the "guaranteed portion of the Note is 75%."  See Kallis's Responses to PUMF Nos. 19, 20.  The basis for this argument is a Charge Off Request and a Substandard Loan Estimated Liquidation Value sheet.  See id.  The Charge

it contends is due and owing under the Note.  PUMF No. 21.  Kallis has not paid any amounts

demanded by the Bank.  PUMF No. 22.   Bank documents indicate that Kallis guaranteed an

SBA Loan and that the Bank had a 25% liability exposure.  See Evidence In Support of DUMF

No. 14; Bank's Response to DUMF No. 14.[10]  The Guarantee indicates that the guarantor waives

defenses based on the lender making a commercially unreasonable disposition of collateral.

DUMF No. 16.[11]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine

issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v.

American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004); Jung v. FMC Corp., 755

F.2d 708, 710 (9th Cir. 1985).  Where summary judgment requires the court to apply law to

undisputed facts, it is a mixed question of law and fact.  See Sousa v.Unilab Corp. Class II (Non-

---

Off Request is dated November 22, 2005, and states in part: "Demand from out guarantor to honor his guarantee is being made by [Bank]'s legal counsel.  Pending response from our demand.  This balance represents [Bank]'s 25% exposure on this credit.  All legal fees and costs, plus 120 days interest will be taken from recovery proceeds before requesting SBA to honor the guaranty on remaining principal balance."  See Farley Declaration Exhibit E.  The Substandard Loan form is dated November 7, 2005, and, across from the "Guaranteed Portion" line in the "Guarantee %" box is 75% and an asterisk indicates that the 75% figure is part of an SBA guarantee.  See Farley Declaration Exhibit B.  These Exhibits indicate to the Court that there is another source of funds available to the Bank, apparently the SBA.  However, as discussed in footnote 2, supra, the Guarantee contains no limitation on the amount of the Note that Kallis guarantees.  Kallis does not adequately discuss how the Charge Off Request or Substandard Loan documents affect the Guarantee.  However, given the resolution of this motion, it is not necessary to resolve that issue at this time.

[10]DUMF No. 14 states, "SBA Loan guaranteed by Defendant indicated an SBA loan with Plaintiff having a 25% liability exposure."  The evidence cited in support of the DUMF are a "Charge Off Request" and "Substandard Loan Estimated Liquidation Value."  In other words, although the DUMF references the Guarantee, it does not cite to the Guarantee.  The Guarantee itself indicates no limitation on liability exposure by Kallis and also states that SBA is not a co-guarantor and that Kallis has no right of contribution from SBA.  See Exhibit F Farley Declaration.

[11]The PUMF refers to "the SBA contract," but the evidence supporting the PUMF shows that the "SBA contract" is actually the Guarantee.  The Bank argues that the fact is unintelligible and irrelevant, and, although the Guarantee contains a waiver of Kallis's right to a commercially reasonable transaction, the waiver is irrelevant because the Bank has shown that the disposition was commercially reasonable.  See Response to DUMF No. 16.  The Guarantee states the guarantor (Kallis) "waives any defenses based upon any claim that . . . Lender did not conduct a commercially reasonable sale. . . ."  Exhibit F Farley Declaration.  Given the papers filed and the language in the Guarantee, the Court reads the PUMF as referring to the waiver by Kallis of his right to a commercially reasonable disposition of collateral at paragraph 6(C)(7) in the Guarantee.  See id.

5

Exempt) Members Group Benefit Plan, 252 F. Supp.2d 1046, 1049 (E.D. Cal. 2002).  Where the

case turns on a mixed question of law and fact and the only dispute relates to the legal

significance of the undisputed facts, the controversy for trial collapses into a question of law that

is appropriate for disposition on summary judgment.  See Union Sch. Dist. v. Smith, 15 F.3d

1519, 1523 (9th Cir. 1994); Sousa, 252 F.Supp.2d at 1049.

> Under summary judgment practice, the moving party always bears the initial
> responsibility of informing the district court of the basis for its motion, and
> identifying those portions of "the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with the affidavits, if any," which
> it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on

file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and

upon motion, against a party who fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of proof at

trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

circumstance, summary judgment should be granted, "so long as whatever is before the district

court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

satisfied."  Id. at 323.

 If a moving party fails to carry its burden of production, then "the non-moving party has

no obligation to produce anything, even if the non-moving party would have the ultimate burden

of persuasion."  Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1102-03 (9th

Cir. 2000).  If the moving party meets it initial burden, the burden then shifts to the opposing

party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire & Marine Ins., 210 F.3d

at 1103; Nolan v. Cleland, 686 F.2d 806, 812 (9th Cir. 1982); Ruffin v. County of Los Angeles,

607 F.2d 1276, 1280 (9th Cir. 1979).  A fact is "material" if it might affect the outcome of the

suit under the governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Assn, 322 F.3d 1039, 1046 (9th Cir. 2002).  A "genuine issue of material fact" arises when the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248-49; Thrifty Oil, 322 F.3d at 1046.

In attempting to establish the existence of a factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Willis v. Pacific Maritime Ass'n, 244 F.3d 675, 682 (9th Cir. 2001).  However, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  First Nat'l Bank, 391 U.S. at 290; Hopper v. City of Pasco, 248 F.3d 1067, 1087 (9th Cir. 2001).  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587; Mende v. Dun & Bradstreet, Inc., 650 F.2d 129, 132 (9th Cir. 1982).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  See Rule 56(c); Fortyune, 364 F.3d at 1079-80.  The court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, but the court is not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references.  See Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).  The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Anderson, 477 U.S. at 255; Matsushita, 475

7

U.S. at 587; Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Mayweathers v. Terhune, 328 F.Supp.2d 1086, 1092-93 (E.D. Cal. 2004); UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993, 997 (E.D. Cal. 2004).  "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial."  Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see also Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment.  See Nissan Fire & Marine, 210 F.3d at 1103.

## BANK'S MOTION FOR SUMMARY JUDGMENT

*Plaintiff's Argument*

The Bank argues that it is entitled to summary judgment on its claim against Kallis and on all of Kallis's eight affirmative defenses.  The Bank argues that it has a valid guaranty that is signed by Kallis, that it has performed its obligation, but that Kallis has not paid despite requests that he so pay, and that the submitted evidence shows that Kallis, as guarantor, owes over $200,00 on the promissory note.

With respect to Kallis first affirmative defense, failure to state a claim, the complaint contains the elements of a breach of guarantee cause of action.  This affirmative defense is, thus, without merit.

With respect to the second affirmative defense, an uncertain and unintelligible complaint, the complaint properly states a cause of action, and attaches both the promissory note and

1  guarantee.  There is no unintelligibility.

2        With respect to the third affirmative defense, commercially unreasonable disposition of

3  collateral, the facts demonstrate that the disposition of the collateral by the Bank was performed

4  pursuant to California Commercial Code § 9610, et seq., and was thus, commercially reasonable.

5  The Bank argues that, as a secured party, it could dispose of the collateral at either a public or

6  private sale.  The California Commercial Code does not state where a public sale needs to occur,

7  but § 9611 requires that a secured creditor give notice of the disposition that must describe the

8  debtor and secured property, describe the collateral, state the method of disposition, state that the

9  debtor is entitled to an accounting, and states the time and place of the public sale.  Section 9611

10  also requires that notice be sent to certain, specified individuals.  Notice must be sent within a

11  reasonable time of disposition.  Here, the evidence shows that the disposition of collateral was

12  commercially reasonable.  The notices sent by the Bank followed the requirements of § 9611 and

13  everyone required to receive notice so received.  WT Capital sent notices to seven

14  entities/individuals, including Kallis.  An amended notice was sent on October 7 and the public

15  sale was held on October 17 at the time and place described in the notice.  The collateral was

16  sold for $51,000 after three parties made twelve bids.  Accordingly, the undisputed facts show

17  that the collateral was disposed of in a commercially reasonable manner, and Kallis's affirmative

18  defense is without merit.

19        With respect to the fourth affirmative defense, estoppel, since the sale of the collateral in

20  this case was done in a commercially reasonable manner, the issue of estoppel is inapplicable.

21        With respect to the fifth affirmative defense, reduction of a monetary award by the

22  difference between the collateral's fair market value and the amount actually realized through the

23  sale of the collateral, California Commercial Code § 9626 controls such a reduction.  Section

24  9626 applies when a secured party has failed to demonstrate compliance with the California

25  Commercial Code.  Since the Bank did comply with the code, no reduction is applicable.

26        With respect to the sixth affirmative defense, guarantee or parts thereof void against

27  public policy, the Bank argues that it is entitled to collect under the guarantee because the

28                             9

1  collateral was sold in conformity with the requirements of the California Commercial Code.

2  Since the Commercial Code was followed, this defense is without merit.

3      With respect to the seventh affirmative defense, absence of a knowing waiver of rights

4  and defenses, the Bank argues that this is not an affirmative defense, but is instead a statement

5  that Kallis failed to knowingly waive rights and defenses.  The rights and defenses are not set

6  forth in the complaint and there is no further elaboration.

7      With respect to the eighth affirmative defense, contract of adhesion, guarantee contracts

8  are not contracts of adhesion.  Kallis's final defense is without merit.

9      *Kallis's Opposition*

10     Kallis argues that the Bank has not established all of the elements of its cause of action.

11 There is a dispute as to the validity of the guarantee because it has elements of unconscionability,

12 there is also a dispute regarding the Bank's performance because it is unclear that the sale of the

13 collateral was commercially reasonable, and there is a dispute over the amount owed.

14     With respect to the first affirmative defense, Kallis makes no argument.

15     With respect to the second affirmative defense, Kallis argues that the original complaint

16 contained a substantial error in that it did not apply the proceeds of the collateral sale against the

17 amount due under the note/by Kallis.  However, the amended complaint credits Kallis with less

18 than the sale proceeds, and, accordingly, the Bank's complaint is unintelligible and ambiguous

19 because it does not make clear the true amount in controversy.

20     With respect to the third affirmative defense, every aspect of the sale of collateral must be

21 commercially reasonable.  Although a low price obtained for collateral standing alone is an

22 insufficient basis for commercial unreasonableness, a low price suggests that a court should

23 scrutinize carefully all aspects of a disposition to ensure that each aspect was commercially

24 reasonable.  Courts have identified seventeen factors to consider in assessing the commercial

25 reasonableness of a sale.  See In re Crosby, 176 B.R. 189, 196 (B.A.P. 9th Cir. 1994).  Included

26 towards the top of the list is the choice between public and private sale and the price realized.

27 See id.  Here, Kerr testified that he not only made an offer of $125,000, but also that he was

28                                           10

willing to pay up to $175,000, and that he believed the value of the collateral was much higher than the $35,000 opening bid and the $51,000 purchase price.  It is not commercially reasonable to reject an offer for a private sale and then sell the collateral much less at a public sale.  Further, Kerr testified that he never attended such an auction, which suggests that an auction was not a reasonable method disposition, and the Bank's own valuation of the collateral after the sale indicated a value of $207,000.  Also, there is no indication that the Bank appraised the collateral before sale.  The UCC comment to section 9-610 indicates that it encourages private sales.  There is no explanation why a public sale was chosen, the sale was conducted in the middle of the day which may have impeded individuals from attending, and the low purchase price shows that a fair price was not obtained.  It is also unclear why the Bank refused the amount privately offered by Kerr and why the Bank ignored the request by attorney Stringham for a private sale.  There are thus questions as to the commercial reasonableness of the sale.

With respect to the fourth defense, because there is an indication of a commercially unreasonable sale, the Bank is estopped from asserting a claim of breach of guarantee.  Even selling to Kerr at the $125,000 offer would have substantially reduced the debt.

With respect to the fifth affirmative defense, because the sale was conducted in a commercially unreasonable manner, Kallis should be entitled to reduction to reflect the proceeds that would have been obtained at a commercially reasonable sale.  The Bank's conduct has created a higher than necessary deficit.

With respect to the sixth affirmative defense, the Court has a duty to not enforce an unconscionable contract.  The guarantee signed in this case forces Kallis to waive all of his rights and exposes him to a potentially the commercially unreasonable decisions of the Bank.  The Guarantee has twenty-seven waivers, including waiving the right to a commercially reasonable disposition of the collateral even though this right cannot be waived as per UCC 9-602.

With respect to the seventh affirmative cause of action, Kallis argues that he did not understand the nature of the right he was signing away and did not understand what was occurring.  Kallis did not understand that he was signing away all his rights to make the Bank

1    responsible for its commercially unreasonable conduct.

2         With respect to the eighth cause of action, Kallas makes no argument.

3    **Discussion**

4    **1.    The Bank's Breach of Guarantee & Kallis's Third Affirmative Defense of
           Commercially Unreasonable Disposition of Collateral**

5

6         The Bank's only cause of action is intertwined with Kallis third "affirmative defense."

7    Both parties agree that breach of a written guarantee is a contractual cause of action and that the

8    elements are: (1) a valid agreement/contract; (2) performance by the Bank; (3) Kallis's failure to

9    perform; and (4) damages caused by the Bank.  See Reichert v. General Ins. Co., 68 Cal.2d 822,

10   830 (1968).[12]  Although not alleged in the complaint, this is a deficiency case in that the Bank

11   seeks to recover from Kallis the remaining amount owed under the Note following the sale of

12   collateral and application of the sale's proceeds against the Note.  See Florio v. Lao, 68

13   Cal.App.4th 637, 644-46 (1998); see also PUMF Nos. 16-19.

14        California Commercial Code § 9601, et seq., governs defaults in the context of secured

15   transactions, and § 9610 specifically deals with the disposition of collateral after default.  See

16   Cal. Comm. Code § 9610.  "After default, a secured party may sell, lease, license, or otherwise

17   dispose of any or all of the collateral in its possession . . . ."  Cal. Comm. Code § 9610(a); see

18   also Cerritos Valley Bank v. Stirling, 81 Cal.App.4th 1108, 1113 (2000).  "Every aspect of a

19   disposition of collateral, including the method, manner, time, place, and other terms, must be

20   commercially reasonable.  If commercially reasonable, a secured party may dispose of collateral

21   by public or private proceedings . . . ."  Cal. Comm. Code § 9610(b).  "The fact that a greater

22   amount could have been obtained by a collection, enforcement, disposition, or acceptance at a

23   different time or in a different method from that selected by the secured party is not of itself

24   sufficient to preclude the secured party from establishing [commercial reasonableness]."  Cal.

25   Comm. Code § 9627(a); see Hutchison v. Southern California First Nat. Bank, 27 Cal.App.3d

26   _____

27        [12]The parties cite only *Reichert* in listing the elements of a breach of written guarantee, even though
     *Reichert* dealt with insurance policies and not guarantees of promissory notes.  See Reichert, 68 Cal.2d at 825-28.

28                                                    12

572, 583 (1972).  With respect to commercial reasonableness,

> A disposition of collateral is made in a commercially reasonable manner if the disposition satisfies any of the following conditions: (1) It is made in the usual manner in a recognized market, (2) It is made at the price current in any recognized market at the time of disposition, [or] (3) It is made otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition.

Cal. Comm. Code § 9627(b); see also Hutchison, 27 Cal.App.3d at 583.  However, the methods of commercially reasonable dispositions listed under § 9627(b) are not required or exclusive, and other types of dispositions may be commercially.  See Comment No. 3 to Cal. Comm. Code § 9627; 11 Anderson, Uniform Commercial Code, § 9-627:5 (3d ed. 1999).  Whether a disposition is commercially reasonable is generally a question of fact and depends on all of the circumstances existing at the time of the sale.  See Ford & Vlahos v. ITT Commercial Finance Corp., 8 Cal.4th 1220, 1235 (1994) (noting that the determination is "intensively factual"); Aspen Enterprises, Inc. v. Bodge, 37 Cal.App.4th 1811, 1827 (1995); Crocker Nat. Bank v. Emerald, 221 Cal.App.3d 852, 862 (1990).

A secured party who disposes of collateral as prescribed by § 9610 must also send an authenticated notification of disposition of collateral to the debtor, secondary obligors, and other secured parties within a "reasonable time."[13]  Cal. Comm. Code §§ 9611, 9612; see also Stirling, 81 Cal.App.4th at 1113.  The notification must describe the debtor and secured party, describe the collateral, state the method of disposition, state the time and place of disposition, and state that the debtor is entitled to an accounting of the unpaid indebtedness and the cost of the accounting.  Cal. Comm. Code § 9613.

In an action to obtain a deficiency that remains after the sale of collateral, "If the secured party's compliance [with Chapter 9600's provisions relating to collection, enforcement, disposition, or acceptance] is placed in issue, the secured party has the burden of establishing that the collection, enforcement, disposition, or acceptance was conducted in accordance with

---

[13]Notice in non-consumer transactions that is sent after default and at least 10 days before the date of disposition contained within the notice is sent within a reasonable time.  Cal. Comm. Code § 9612.

[Chapter 9600]."  Cal. Comm. Code § 9626(a)(2);[14] cf. Brunzell Construction Co., Inc. v. Smith, 200 Cal.App.3d 617, 621 (1988) (secured party has burden to prove commercial reasonableness and proper notice); American National Bank v. Perma-Tile Roof Co., 200 Cal.App.3d 889, 895 (1988) (same); J. T. Jenkins Co. v. Kennedy, 45 Cal.App.3d 474, 481 (1975) (same); Barber v. LeRoy, 40 Cal.App.3d 336, 343 (1974) (same).  Prior to the adoption of § 9626, the failure of a secured party to follow the Commercial Code's requirements for disposing of collateral acted as a bar to recovery of a deficiency judgment.  E.g., Stirling, 81 Cal.App.4th at 1113; Atlas Thrift Co. v. Horan, 27 Cal.App.3d 999, 1009 (1972).  Section 9626 changes this rule and provides in part:

> (3) . . . if a secured party fails to prove that the collection, enforcement, disposition, or acceptance was conducted in accordance with the provisions of this chapter relating to collection, enforcement, disposition, or acceptance, the liability of a debtor or a secondary obligor for a deficiency is limited to an amount by which the sum of the secured obligation, expenses, and attorney's fees exceeds the greater of either of the following:
>
> > (A) The proceeds of the collection, enforcement, disposition, or acceptance.
>
> > (B) The amount of proceeds that would have been realized had the noncomplying secured party proceeded in accordance with the provisions of this chapter relating to collection, enforcement, disposition, or acceptance.
>
> (4) For purposes of subparagraph (B) of paragraph (3), the amount of proceeds that would have been realized is equal to the sum of the secured obligation, expenses, and attorney's fees unless the secured party proves that the amount is less than that sum.

Cal. Comm. Code § 9626(a)(3), (4).  Accordingly, § 9626 provides for a limitation on liability for a deficiency, and the application of subparagraphs (a)(3)(B) and (a)(4) can have the effect of barring a deficiency judgment through a presumption that the amount realized at a proper, "commercially reasonable" disposition would have been equal to the debt, expenses and attorney's fees claimed by the secured party.  See id.

In this case, the dispute raised before the Court is the commercial reasonableness of the

---

[14]If the debtor or secondary obligor does not place commercial reasonableness at issue, the secured party need not prove commercial reasonableness.  Cal. Comm. Code § 9626(a)(1).

disposition of collateral.  Both parties rely on and cite to § 9610.[15]  Further, although discussed in the "off set" affirmative defense portion of its brief, the Bank cites to § 9626(a)(3) and argues that the section does not aide Kallis because the Bank has met its burden of establishing a commercially reasonable disposition of the collateral.  The Court does not find the Bank's arguments persuasive at this juncture.

The primary focus of the Bank's commercial reasonableness argument is that the Bank sent notice to numerous individuals, including Kallis, and that the Bank actually performed an auction/public sale that conformed to the notice.  However, the "requirements of notice and of commercial reasonableness are separate but related concepts under the California Uniform Commercial Code."  Clark v. EZN, Inc., 57 Cal. App. 4th 852, 856-57 (1997); see Ford & Vlahos, 8 Cal.4th at 1231 (noting that the "requirements of proper notice and of commercial reasonableness . . . are distinct.").  There appears to be no dispute that the Bank met its obligations under § 9611, 9612 and 9613 and provided appropriate notice.  Indeed, Kallis takes no issue whatsoever with the Bank's notice.  However, the criteria for commercial reasonableness is not set by § 9611, § 9612 or § 9613.  With respect to the methods identified in § 9627, the Bank has not submitted evidence that the collateral was either disposed in the usual manner in a recognized market, was sold at the price current in any recognized market, or was otherwise disposed in conformity with reasonable commercial practices among dealers in the type of property at issue.  See Cal. Comm. Code § 9627(b).  As to the disposition that did take place, the only thing that the Court can say is that a public auction occurred at the time and place noticed.  The Court does not know, for example, whether, given the nature of the collateral involved, a public auction at the steps of City Hall of Tulare was reasonable, whether a sufficient number of bidders attended so as to make the auction worth while, whether it was reasonable to not sell the collateral through a private sale to Kerr,[16] or whether beginning the bidding at

_____

[15]However, Kallis cites to the identical U.C.C. provisions.

[16]However, the mere fact that a private sale to Kerr would have realized a greater price "is not in and of itself sufficient to preclude" a finding of commercial reasonableness.  Cal. Comm. Code § 9627(a).

15

$35,000 was reasonable considering that the Bank had received an offer for $125,000 and Bank documents indicated the collateral had a value of $207,000.[17]  Cf. In re Crosby, 176 B.R. at 196. Viewing the evidence in the light most favorable to Kallis and making all reasonable inferences in his favor as the non-moving party, the Court does not see that the evidence points necessarily to a finding of commercial reasonableness, especially since the commercial reasonableness of a disposition is generally an "intensively factual question and depends on all of the circumstances existing at the time of sale." Ford & Vlahos, 8 Cal.4th at 1235; Aspen Enterprises, 37 Cal.App.4th at 1827.  Given the evidence submitted, the Court cannot say that, as a matter of law, every aspect of the disposition of collateral was commercially reasonable.  Accordingly, summary judgment on the Bank's claim and on Kallis's third "affirmative defense" is denied.[18]

**2.      Kallis's First Affirmative Defense – Failure To State A Claim**

Kallis makes no opposition argument in support of this claim.  The operative complaint in this case is the first amended complaint ("FAC").  The FAC states that STR obtained a promissory note, that Kallis signed a guarantee, that STR defaulted, that the Bank performed its functions and requested payment under the Guarantee, and that Kallis has failed to pay.  This is sufficient to state a claim.  Summary judgment in favor of the Bank on this defense is granted.

**3.      Kallis's Second Affirmative Defense – Uncertain, Ambiguous, and Unintelligible Complaint**

Kallis's argument that the FAC is uncertain, ambiguous, and unintelligible is unpersuasive.  The complaint is clear and states that the total amount outstanding on the note is

---

[17]In a Substandard Loan Estimated Liquidation Value form, the Bank lists the "appraised value" of the collateral as $207,000.  Farley Declaration Exhibit B; see also DUMF No. 9.  The Bank argues that the $207,000 appraisal figure actually came from STR.  See Second Castle Declaration at ¶ 6; see also First Castle Declaration Exhibit C.  Nevertheless, there is no indication that the Bank had reason to doubt this value or not accept the valuation as reasonably accurate, and there is no evidence that the Bank challenged this valuation when it was made in connection with the security agreement.

[18]The Court requested additional briefing from the parties on the issue of whether Kallis is a "debtor," "obligor," or "secondary obligor" under the California commercial code.  See Cal. Comm. Code § 9102.  Kallis argues that he is a debtor and the Bank argues that he is a secondary obligor.  Both parties agree, however, that Kallis has a right to a commercially reasonable disposition under the California commercial code.  Since both sides are in agreement that Kallis has this right, and the Bank indicates that it has the duty to establish a commercially reasonable disposition under § 9626, it is not necessary to decide whether Kallis is a debtor or secondary obligor.

1   approximately $208,000.  See FAC.  There is nothing ambiguous or unintelligible about this.

2   Kallis's argument against the FAC is in fact based on the original complaint.  Reliance on the

3   original complaint is not appropriate because the amended complaint supersedes the original

4   complaint, see Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967), and the joint scheduling

5   conference statement indicates that the Bank admitted that the original complaint failed to apply

6   the proceeds of the sale to the amount due under the note, which is why the Bank stated that it

7   would file an amended complaint.  See Court's Docket Doc. No. 10.  What Kallis is actually

8   doing is challenging an element of the Bank's cause of action:  damages.  The mere negation of a

9   required element of a cause of action is not an affirmative defense.  Zivkovic v. Southern Cal.

10  Edison, 302 F.3d 1080, 1088 (9th Cir. 2002).  In any event, the operative complaint, the FAC, is

11  not ambiguous, uncertain, or unintelligible.  Summary judgment on this defense is granted.

12  **4.      Kallis's Fourth Affirmative Defense – Estoppel**

13          The Bank moved for summary judgment on this affirmative defense on the basis that the

14  disposition of the collateral was commercially reasonable.  In its reply, the Bank argued, for the

15  first time, that Kallis had not presented evidence that showed either reliance by Kallis or the

16  Bank's intent that Kallis rely on the Bank's conduct.  Kallis's opposition was that the disposition

17  of collateral was not commercially reasonable.  In other words, Kallis addressed the only

18  argument in the complaint that was made by the Bank against this defense.  The Court will not

19  consider the new issues raised by the Bank in its reply.  See United States v. Boyce, 148

20  F.Supp.2d 1069, 1085 (S.D. Cal. 2001).  As discussed above, commercial reasonableness has not

21  been established by the Bank.  Accordingly, summary judgment on this defense will be denied.[19]

22

23

24          [19]However, if this affirmative defense is simply another method of raising the issue of a commercially
     reasonable disposition, the Bank itself acknowledges that it is the secured party's burden to establish commercial
25   reasonableness as per § 9626(a)(2).  See Bank's Memorandum In Response To Request For Additional Briefing.  If
     the Bank fails, then §§ 9626(a)(3) and (4) apply.  Assuming *arguendo* that a commercially unreasonable disposition
26   occurred, that alone is not sufficient to estop the Bank.  Cf. Ashou v. Liberty Mutual Fire Ins. Co., 138 Cal. App. 4th
     748, 766-67 (2006) (noting the elements of equitable estoppel).  If Kallis has evidence that meets the elements of
27   equitable estoppel, i.e. relies on something more than a commercially unreasonable sale, then there may be merit to
     this affirmative defense.  If Kallis has no such evidence, then the affirmative defense should not be pursued.

28                                                              17

1   **5.      Kallis's Fifth Affirmative Defense – Reduction Of Amount Owed**

2          In the Bank's motion, it argues that § 9626(a) governs in the event that a disposition is

3   determined to be commercially unreasonable.  Kallis failed to address § 9626(a) in his opposition

4   and failed to cite any statutory or case authority.  However, as discussed above, application of §

5   9626(a) could have the effect of either reducing the amount of the deficiency or preventing a

6   deficiency judgment altogether.  As argued by the parties, application of § 9626(a) would occur if

7   the Bank does not meet its burden of proving compliance with the Commercial Code, which

8   means proving a commercially reasonable disposition of collateral.  Since Kallis's argument

9   regarding this disposition is premised on the absence of a commercially reasonable disposition,

10  this "affirmative defense" appears to be redundant to § 9626(a).  Based on the arguments of the

11  parties at this point, the Court will interpret this affirmative defense as a method of placing the

12  Bank's compliance in issue, i.e. requesting application of § 9626(a).  With this limitation, the

13  Court will deny summary judgment as to this "affirmative defense."[20]

14  **6.      Sixth Affirmative Defense – Guarantee Void As Against Public Policy**

15         The Bank's argument is essentially that it is not trying to enforce any of the waivers that

16  are specifically identified by Kallis and that the disposition of the collateral was commercially

17  reasonable.[21]  The affirmative defense attacks seeks to void the guarantee.  It goes without saying

18  that a void document cannot be enforced, and the Bank has not cited case or statutory authority in

19  support of its argument that providing notice and conducting a commercially reasonable sale

20  would negate the affirmative defense.  Further, as discussed above, the Bank has not shown that

21  the disposition was commercially reasonable.  Accordingly, given the argument in the initial

22

23

24          [20]Otherwise, Kallis has failed to adequately cite authority or support this affirmative defense.

25          [21]In reply, the Bank argues that Kallis has not shown procedural unconscionability and that many of the

26  suretyship defenses waived in the guarantee may be waived as per the California Civil Code.  These issues were not
    addressed in the initial motion.  Based on the initial motion, a failure to establish commercial reasonableness is

27  sufficient to deny the motion.  The Bank is in part responding to arguments made by Kallis but, given the nature of
    the initial motion, the Court will not address the arguments in reply.

28                                                              18

1    motion, summary judgment is not appropriate.[22]

2    **7.    Seventh Affirmative Defense – No Knowing Waiver Of Rights**

3         "Waiver is the intentional relinquishment of a known right."  <u>Cathy Bank</u>, 14 Cal.App.4th

4    at 1539.  A "waiver requires the knowing and intelligent relinquishment of a right."  <u>Neubauer v.</u>

5    <u>Goldfarb</u>, 108 Cal.App.4th 47, 57 (2003).  "The burden is on the party claiming a waiver of a

6    right to prove it by clear and convincing evidence that does not leave the matter to speculation . .

7    . ."  <u>Hittle v. Santa Barbara County Employees Ret. Ass'n</u>, 39 Cal.3d 374, 390 (1985); <u>Cathy</u>

8    <u>Bank</u>, 14 Cal.App.4th at 1539.

9         In light of the above, if the Bank seeks to enforce a waiver, it has the burden of proving

10   that Kallis knowingly and voluntarily relinquished a known right.  Thus, Kallis's affirmative

11   defense of "no knowing waiver" is not an affirmative defense because it simply negates a

12   required element of the Bank's claim.  <u>See</u> <u>Zivkovic</u>, 302 F.3d at 1088; <u>Spicer v. Gregoire</u>, 194

13   F.3d 1006, 1008 (9th Cir. 1999); <u>cf.</u> <u>Loder v. City of Glendale</u>, 14 Cal.4th 846, 891 (Cal. 1997).

14   Here, the Bank states that it is not attempting to enforce the waivers in the Guarantee.  If the

15   Bank is not attempting to enforce the waivers, then this defense is irrelevant.

16        Also, the only rights that appear to be at issue in this case are the right to notice and the

17   right to a commercially reasonable disposition of collateral.  Under § 9602(7), Kallis, as either a

18   debtor or secondary obligor, cannot waive his right to a commercially reasonable disposition, or,

19   prior to default his right to notice.[23]  <u>See</u> Cal. Comm. Code § 9602(7); 11 Anderson, Uniform

20   Commercial Code, § 9-602:4 (3d ed. 1999).  Thus, irrespective of Kallis's knowledge, a waiver

21   of the right to a commercially reasonable disposition is prohibited.

22

23   _____

24        [22]The parties cite to California Civil Code § 1670.5 and UCC § 2-302(1).  Both provisions allow a court to
     decline to enforce an entire contract or instead not enforce clauses that are against public policy.  As one Court has

25   explained, "If the parties sign a security agreement containing prohibited waivers, and then seek to enforce them,
     courts most often remedy violations of U.C.C. § 9-602 by simply reading the relevant documents as if the offending

26   clause had never been included. They then assess the parties' conduct under the remaining provisions and the default
     standards set forth in U.C.C. art. 9."  <u>In re Schwalb</u>, 347 B.R. 726, 748 (D. Nev. 2006).  The Court, however, does
     not rule as to the ultimate outcome of the Sixth affirmative defense at this time.

27
         [23]After a default, it is possible for Kallis to waive his right to notice.  Cal. Comm. Code § 9624(a).

28                                                        19

1    Since this affirmative defense is not in actuality an affirmative defense, but merely the

2    negation of an element that the Bank must establish to prove waiver, and the Bank is not seeking

3    to enforce the waivers in the Guarantee, the Court will deny summary judgment.

4    **8.      Eighth Affirmative Defense – Contract of Adhesion**

5    There is no response or opposition to the Bank's motion on this point.  "The term

6    [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party

7    of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere

8    to the contract or reject it."  Badie v. Bank of Am., 67 Cal.App.4th 779, 786 n.5 (1998).  The

9    Bank is correct that California courts hold that guarantee contracts are not contracts of adhesion.

10   See Cathay Bank v. Lee, 1533, 1541 (1993); Stevenson v. Oceanic Bank, 223 Cal.App.3d 306,

11   318-19 (1990); Security Pacific Nat'l Bank v. Adamo, 142 Cal.App.3d 492, 497-98 (1983).

12   Further, one court has expressly held that, under California law, "standardized promissory note

13   forms into which the interest rate and other agreed upon terms are inserted . . . are not

14   unenforceable contracts of adhesion."  Federal Sav. & Loan Ins. Corp. v. Musacchio, 695

15   F.Supp. 1044, 1053 (N.D. Cal. 1988).  There is no evidence that Kallis or STR involuntary

16   signed the Note or the Guarantee, that there was a significant disparity in bargaining power, that

17   Kallis or STR were unable to negotiate the terms of the Note or Guarantee, or that they could not

18   otherwise "shop around."  See Musacchio, 695 F.Supp. at 1053; Stevenson, 223 Cal.App.3d at

19   319.  Moreover, Kallis has failed to respond to the Bank's arguments or defend this affirmative

20   defense.  Accordingly, summary judgment in favor of the Bank on this affirmative defense is

21   granted.

22                                **CONCLUSION**

23   The Bank moves for summary judgment on its only claim against Kallis and on each of

24   Kallis's eight affirmative defenses.  Summary judgment with respect to the first affirmative

25   defense is appropriate because the complaint states a claim.  Summary judgment with respect to

26   the second affirmative defense is appropriate because the FAC is not unintelligible or ambiguous.

27   Summary judgment with respect to the eighth affirmative defense is appropriate because

28                                      20

guarantees are not contracts of adhesion and Kallis has not adequately defended this affirmative defense.  Summary judgment with respect to the fifth affirmative defense is denied in light of the Court construing the defense as requesting the application of § 9626.  Summary judgment with respect to the Bank's claim and Kallis's third "affirmative defense" is not appropriate because the Bank has not adequately established that the sale was commercially reasonable.  Summary judgment on the fourth affirmative defense is not appropriate because the basis for the motion on this defense was that the Bank established a commercially reasonable disposition.  Summary judgment on the sixth affirmative defense is not appropriate because the Bank has not established a commercially reasonable disposition.  Finally, summary judgment with respect to the seventh affirmative defense is not appropriate because it is simply a mislabeled negation defense and the Bank has not attempted to enforce any waiver.

Accordingly, IT IS HEREBY ORDERED that the Bank's motion for summary judgment, or alternatively summary adjudication is:

1.      DENIED as to the Bank's claim for breach of written guarantee;

2.      GRANTED as to Kallis's First Affirmative Defense;

3.      GRANTED as to Kallis's Second Affirmative Defense;

4.      DENIED as to Kallis's Third Affirmative Defense;

5.      DENIED as to Kallis's Fourth Affirmative Defense;

6.      DENIED as to Kallis's Fifth Affirmative Defense;

7.      DENIED as to Kallis's Sixth Affirmative Defense;

8.      DENIED as to Kallis's Seventh Affirmative Defense; and

9.      GRANTED as to Kallis's Eighth Affirmative Defense.


IT IS SO ORDERED.

**Dated:   December 6, 2006**               **/s/ Anthony W. Ishii**
0m8i78                                      UNITED STATES DISTRICT JUDGE